628 So.2d 184 (1993)
Audrice Laverne Arnold DOYAL, Plaintiff-Appellant,
v.
Jerry Dean PICKETT and N. Jean Gildon Pickett, Defendants-Appellees.
No. 25,247-CA.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1993.
*185 A. Richard Snell, Bossier City, for plaintiff-appellant.
Ford E. Stinson, Jr., Benton, for defendants-appellees.
Before SEXTON, NORRIS and VICTORY, JJ.
NORRIS, Judge.
In this partition proceeding, plaintiff, Mrs. Doyal, appeals the trial court judgment denying her demand for partition of certain real property. She urges the trial court erred in failing to properly construe a deed setting forth a compromise, and thus finding she did not have an ownership interest in the property; and in not allowing expert testimony to aid it in interpreting the compromise deed language. Finding no error in the trial court's denial of appellant's partition demand, we amend and affirm.

Factual background
In 1965, by virtue of her father, Aubrey Arnold's succession, Mrs. Doyal and her sister, Nora Allen, were each recognized as *186 owners of an undivided one-fourth interest and their mother, Mrs. Evelyn Arnold, was recognized as the owner of an undivided one-half interest in certain real estate (including the home place at issue) formerly belonging to their parents' marital community. Mrs. Doyal's and Mrs. Allen's interests were subject to a usufruct in favor of their mother. In 1969, Mrs. Doyal, alleging unwillingness to remain a co-owner, filed for a partition of the former community property, but the action was never tried; instead, Mrs. Doyal and her mother, by this time married to James Mason, executed a compromise deed in 1971.
By this deed, Mrs. Doyal transferred to her mother her entire interest in all of the property in Mr. and Mrs. Arnold's former marital community in consideration for $10,000 cash and the settlement of all claims each had against the other arising out of the joint ownership of the former community property. Mrs. Doyal claims that by the second clause of the compromise deed, which appears later in this opinion, she "excepted" from transfer certain specifically described real estate, including the home place. By the third clause, she reserved her mineral interest in the "hereinabove described lands." Finally, by the same instrument, she conveyed to her mother her entire interest in specified movable property. This deed was recorded in the conveyance records of Bossier Parish on May 12, 1971.
Mrs. Arnold, in October 1976, transferred her entire undivided interest in the real property at issue by assumption deed to her daughter Nora Allen and her husband J.A. Allen. Thereafter, in March 1984, Mr. and Mrs. Allen transferred the home place by cash deed to the defendants, Mr. and Mrs. Pickett, for $40,000 cash and other valuable consideration. The Picketts took possession of the "home place" and have lived in the home there since 1984.
This matter was tried on October 23, 1992. Mrs. Doyal identified the compromise deed but did not introduce it into evidence. Near the end of the trial, the Picketts introduced it into evidence as a link in their chain of title. In rebuttal, Mrs. Doyal's counsel stated he intended to call two expert witnesses to interpret the deed's language. The trial judge ordered a recess for counsel to locate the witnesses, but admittedly remained undecided as to whether he would ultimately allow their testimony. Counsel returned, without the witnesses, and made a proffer of their testimony.
The trial court gave oral reasons for judgment at the conclusion of the trial. On the day of trial, the Picketts had filed a peremptory exception of ten-year acquisitive prescription which was apparently referred to the merits. The trial court alluded to this in its oral reasons, suggesting that prescription may dispose of the case, but not holding so expressly. The court found that Mrs. Doyal did not own an interest in the home place because the compromise deed did not except from the transfer to her mother the real estate specifically described therein.
The trial court reasoned first, that if Mrs. Doyal did not intend to transfer the real estate, her reservation of the mineral interest was unnecessary. Second, if the immovable property specifically described in the deed was not transferred, Mrs. Arnold would have received only movable household furnishings and appliances which, according to the succession inventory, were not worth the $10,000 consideration she paid. Third, the court noted that Mrs. Doyal did not pay taxes on the home place after 1971, the year of the compromise. Furthermore, even if the deed was ambiguous, the ambiguity would be resolved against Mrs. Doyal because she was the seller and her attorney prepared the document.
On appeal, Mrs. Doyal contests the court's reasoning and argues that the deed language clearly excepts the described real estate from transfer. She further argues that the court erred in failing to allow her two expert witnesses to help the court interpret the deed's language. The Picketts urge affirmance of the trial court judgment for the reasons expressed and further assert they have established ownership by virtue of ten-year acquisitive prescription.

Legal principles
The plaintiff in a partition action must establish his claim to the property; he must *187 prove that he is a co-owner with the defendant, similar to a petitory action. Taylor v. Williams, 107 So.2d 319, 321 (La.App.2d Cir. 1958). A person claiming ownership of an immovable in a petitory action, against another in possession, must prove he acquired ownership from a previous owner or by acquisitive prescription. La.C.C.P. art. 3653; La.C.C. art. 531.
General contract law provides that courts are bound to give legal effect to all contracts according to the true intent of the parties. C.C. art. 2045. When the words in the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. C.C. art. 2046. However, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or to show the parties' intent. Ayers v. Kent, 438 So.2d 691 (La.App.2d Cir.1983). Any doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. C.C. art. 2053; Allen v. Burnett, 530 So.2d 1294 (La.App.2d Cir.1988).
In Williams v. Hawthorne, 601 So.2d 672 (La.App.2d Cir.1992), we set forth the legal principles for construing deeds as follows:
The cardinal rule to be followed in construing deeds, uncertain because of ambiguity, is to ascertain the intention of the parties from the entire language of the deed. In the interpretation of deeds, the intentions of the parties must be gathered from an inspection of the instrument itself, without the aid of extrinsic evidence, if their intentions can be thus ascertained. If the description is so ambiguous as to leave doubt as to the parties' intent, the court may resort to extrinsic evidence as an aid in construction. (citations omitted)
The seller is bound to explain himself clearly respecting the extent of his obligations: any obscure or ambiguous clause is construed against him. La.C.C. art. 2474. In deeds, where language making an exception or reservation is doubtful, it must be construed most favorably to the grantee. Rock Island, A. & L.R. Co. v. Guillory, 205 La. 141, 17 So.2d 13 (1943); Welsh Southern Oil Co. v. Scurlock Oil Co., 201 So.2d 376 (La.App.3d Cir.1967).
A trial court's factual findings are entitled to great weight and will not be disturbed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989).

Construction of the compromise agreement
The crucial issue is whether Mrs. Doyal met her burden of proving that she owned an interest in the home place. It is undisputed that if she transferred her interest in the immovable property specifically described in the compromise deed, her claim of co-ownership must fail.
Mrs. Doyal claimed a one quarter interest in the home place by virtue of inheritance from her father. She made a prima facie showing, through introduction of the succession proceedings, that she did acquire an interest in 1965. The Picketts rebutted her prima facie showing by introducing the compromise deed, contending that she had transferred her interest in the property to her mother in 1971.
The controversy centers on the second clause in the 1971 compromise agreement whereby Mrs. Doyal transferred:
All of her right, title and interest in and to all of the property that was property of the marital community of acquets and gains existing between her mother, Evelyn Allison Arnold Mason, and her late father, Aubrey Franklin Arnold, except that she is to keep all sums and movable property heretofore received and particularly including all of her right, title and interest in and to all of the following described property, to-wit: [the home place and other immovable property are specifically described].
(emphasis added)
Mrs. Doyal contends the deed is not ambiguous; it clearly and unequivocally "excepts" the home place from transfer. We disagree.
*188 Upon a literal reading, one could attempt to argue that the described real estate (including the home place) is excepted from transfer as there is neither a comma after the word "received" nor parentheses setting off the "exception" clause emphasized above. However, this strained interpretation creates a conflict with the mineral reservation clause. When these two provisions are read together as Mrs. Doyal proposes, the contract is ambiguous; she excepted from sale and thus retained ownership of the described immovable property and then reserved a mineral interest in her own land.
Reservation of the mineral interest was unnecessary if Mrs. Doyal actually intended to except the described real property from transfer. The landowner has the exclusive right to explore and develop his property for the production of such minerals and to reduce them to possession and ownership. La.R.S. 31:6. A conveyance of land carries with it all incidents of ownership, including mineral rights, except such rights as may be expressly reserved. Rosewood Resources, Inc. v. Jonesboro State Bank, 535 So.2d 1083 (La.App.2d Cir.1988).
The trial court concluded that either the contract clearly did not except the described real estate or was ambiguous. We find that the language relied on by Mrs. Doyal to except the home place is somewhat ambiguous because it is subject to more than one interpretation; in that event, it must be construed most favorably to the buyer. Rock Island, A. & L.R. Co. v. Guillory, supra; La.C.C. 2474.
Our task in the case of an ambiguous contract is to ascertain the parties' common intention. Williams v. Hawthorne, supra. Where the contract terms are susceptible to more than one interpretation, its provisions are ambiguous, or the parties' intent is unclear from the document alone, resort to extrinsic evidence is required. Ayers v. Kent, supra. Upon careful consideration of the compromise deed and all extrinsic evidence contained in the record, we conclude the trial court did not commit clear error in finding that Mrs. Doyal did not reserve from the transfer her undivided interest in the real estate particularly described therein.
The documents pertaining to the succession proceedings shed light on Mrs. Doyal's true intent. Mrs. Doyal contends that she reserved her mineral interest as a precautionary measure, because she was transferring "all of her right, title and interest in and to all of the property that was property of the marital community." Presumably, she is arguing that her father's succession included other immovable property, belonging to Mr. and Mrs. Arnold's former marital community, which was not specifically described and excepted in the compromise deed; ergo, she transferred and reserved her mineral interest in this former community real estate. However, the succession documents do not support this theory.
The former marital community, according to the succession documents, consisted of three parcels of land, all of which were particularly described in the compromise deed. There is no evidence of other immovable community property supposedly included in the transfer, and not particularly described, on which she needed to reserve the minerals. She obviously intended to reserve a mineral interest in the land described in the compromise deed and, in fact, expressly reserved her interest in minerals produced from "the hereinabove described" lands. Unless she intended to transfer the real property specifically described, there was no logical reason to reserve her mineral interest. The trial court was not manifestly erroneous in so concluding.
We have also considered Mrs. Doyal's prior partition action against her mother, resolved as a result of the compromise deed. In her petition to partition the succession property, she requested the sale of all community immovables and division of the proceeds. Subsequently, the compromise was entered to settle the partition action between Mrs. Doyal and her mother. Therefore, the compromise deed would presumably also include the immovable property. Moreover, all discernible evidence in the record indicates this intent as well.
First, there would be no need for the parties to have used a real estate deed if the transfer did not include land. Second, the *189 parties recorded the conveyance, which was unnecessary unless immovable property was affected. La.R.S. 9:2721 A. Third, as part of the consideration, Mrs. Doyal agreed to release her mother from "all claims, rights and causes of action that she has or may have against her mother for the land or property of which her mother had the usufruct." (emphasis added)
Additionally, as noted by the trial court, the cash consideration for the sale was $10,000. If all the described immovable property was excluded, the consideration was merely for household furnishings, which did not have a total value of $10,000. Furthermore, the whole point of Mrs. Doyal's previous partition suit was her unwillingness to remain as a co-owner with her mother in the property formerly belonging to the community between her parents. To compromise the suit by remaining a co-owner with her mother seems pointless.
Finally, the trial court noted two additional factors weighing against Mrs. Doyal: she paid no taxes on the home place after 1971 and her attorney prepared or at least notarized her signature on the compromise document. As for the first, the record clearly shows by Mrs. Doyal's own testimony that she did not pay taxes on the home place after 1971. R.p. 41. As for the second, there is admittedly no evidentiary basis to say Mrs. Doyal's attorney prepared the compromise agreement. At the very least, however, the record supports a finding that Mrs. Doyal's attorney was present and presumably read the compromise agreement. Mrs. Doyal retained an attorney for her partition action. This same attorney notarized the compromise deed on behalf of Mrs. Doyal. Neither finding is manifestly erroneous.
In sum, the trial court was not plainly wrong in finding that in the compromise deed, Mrs. Doyal transferred all her interest in the real property described therein, including the home place. Therefore, she failed to meet her burden of proving, as a prerequisite to her right to partition, that she was a co-owner of the home place. The court was correct in rejecting her demand for a partition of the home place property.

The expert witnesses
Finally, Mrs. Doyal argues that she attempted to call two witnesses, experts in the field of title examination, who would interpret the language in the compromise deed and testify that it reserved to Mrs. Doyal the title to the real estate specifically described therein. She asserts that the trial court erred in failing to allow her experts' testimony.
Initially, we note that the trial court never ruled that her experts could not testify. The trial judge merely stated that he was unsure whether to allow their testimony. At that point, Mrs. Doyal's counsel requested a recess to find his witnesses, but upon returning to the courtroom without them, announced an agreement whereby he would make an offer of proof.
Assuming, arguendo, that the trial court denied Mrs. Doyal's experts' testimony, that ruling will not be disturbed on appeal unless manifestly erroneous. Schwamb v. Delta Air Lines, Inc., 516 So.2d 452, 459 (La.App. 1st Cir.1987), writ denied, 520 So.2d 750 (1988). A trial judge has broad discretion in determining who should or should not be permitted to testify as an expert and whether expert testimony is admissible. Id. Whether expert testimony is admissible depends upon whether their scientific, technical, or other specialized knowledge would assist the trier of fact to understand the evidence or determine a fact in issue. La. C.E. art. 702.
The parties' intent with regard to the compromise deed was the central issue. Experts in title examination, with no personal knowledge of the underlying transaction, were incapable of testifying to what the parties intended. The trial judge questioned the purpose of their testimony. R.p. 70. It was within the trial court's discretion to decide that the expert testimony suggested by Mrs. Doyal would not be helpful in interpreting the deed's language. We find no manifest error.

Conclusion
The trial court concluded based on the compromise deed itself and other pertinent *190 documentary and factual evidence that Mrs. Doyal did not prove an ownership interest in the home place property. This finding is not clearly wrong.
Part of the judgment rendered herein, however, is surplusage, and we therefore amend paragraph 2 of the judgment to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of JERRY DEAN PICKETT and N. JEAN GILDON PICKETT, and against AUDRICE LAVERNE ARNOLD DOYAL, rejecting plaintiff's demand for partition of the following described property, to-wit:
East ten (10) acres of Northeast Quarter of Northeast Quarter (NE¼ of NE¼), less North 3 acres and less South 3 acres, Section Fifteen (15), Township Twenty-Two (22) North, Range Fourteen (14) West, Bossier Parish, Louisiana, containing 4 acres, more or less, together with improvements thereon.
Begin at the Northeast corner of Section 15, thence South along Section line 396 feet, thence West 330 feet to point of beginning, thence West 156 feet, thence South 558 feet, thence East 156 feet, thence North 558 feet to point of beginning, located in Southeast Quarter of Northeast Quarter (SE¼ of NE¼), Section 15, Township 22 North, Range 14 West, Bossier Parish, Louisiana, together with all buildings and improvements located thereon.
* * * * * *
As amended, the judgment of the trial court is affirmed. Costs of appeal are assessed to Mrs. Doyal.
AMENDED AND AFFIRMED.